# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————————— )
**RYAN VERRECCHIO**                    )
**124 E Clinton St**                   )
**Clayton, NJ 08312**                  )
                                       )
    *Plaintiff,*   )    **Civil No.** __1:16-cv-697_____
                                       )
    **v.**          )
                                       )
**UNITED STATES DEPARTMENT**           )
**OF THE AIR FORCE,**                  )
**1690 Air Force Pentagon**            )
**Washington, DC 20330-1670**          )
                                       )
    *Defendant.*    )
————————————————————————)

## COMPLAINT

COMES NOW Plaintiff, Ryan Verrecchio, by and through his undersigned counsel, and complains of the Defendant as follows:

### *Jurisdiction*

1.     The Court has jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. § 552a (the Privacy Act of 1974), which provide for redress in the District Courts based upon violations of the Privacy Act. An award of damages is requested for the harm caused by the unlawful and intentional release of information maintained by the Defendant, the United States Air Force. Declaratory relief is requested under 5 U.S.C. § 552a and 28 U.S.C. § 2201. Injunctive relief is requested under 5 U.S.C. §§ 552a(g)(2)(A), (3)(A).

### *Venue*

2.     Venue is proper under 28 U.S.C. § 1391 and 5 U.S.C. § 552a(g)(5).

*Parties*

3.      Plaintiff Ryan Verrecchio (hereinafter "Verrecchio") is a junior police officer at Joint Base McGuire-Dix-Lakehurst (hereinafter "JBMDL").

4.      Defendant, United States Department of the Air Force (hereinafter "Air Force" or "Agency"), is an Agency of the United States within the meaning of 5 U.S.C. § 552a(a)(1), and maintains at least one system of records containing information pertaining to the Plaintiff.

*Statute of Limitations*

5.      Under the Privacy Act, suit must be brought within two (2) years of the date upon which the action arose. *See* 5 U.S.C. § 552a(g)(5). Verrecchio became aware of the violations at issue in or around late March 2016. This complaint is timely filed.

*Governing Statute*

6.      As defined in the Privacy Act, the term "maintain" includes maintain, collect, use, and disseminate, 5 U.S.C. § 552a(a)(3), and connotes control over and responsibility and accountability for systems of records. *See* 5 U.S.C. § 552a.

7.      The Air Force is required to maintain personnel and other Privacy Act protected records, such as non-criminal investigative reports. *See* Air Force Instruction (AFI) 33-332, 1.1.2.1.1, 1.1.2.2.1.1.2.

8.      Such personnel and investigative records are "records" within the meaning of the Privacy Act. *See* 5 U.S.C. § 552a(a)(4).

9.      Such personnel records need not be physically located in the Agency for them to be considered "maintained" by the Defendant. *See* 5 U.S.C. §§ 552a(e)(1); (g)(1)(C).

*Statement of Facts*

10.      Verrecchio became a public servant at age eighteen (18) while a senior in high school.  He worked as a Police and 911 Dispatcher with local police departments, where he

performed flawlessly.  At age nineteen (19), Verrecchio became a Police Officer with the Ocean City Police Department. He performed exceptionally at a young age in a position of great responsibility.

11.     Verrecchio secured year-round employment with the Woolwich Township Police and Collingswood Police as a Special Police Officer. At every position he held, and despite his youth, Verrecchio performed impeccably and without incident.  At a young age, Verrecchio was holding positions of increased responsibility and public trust. During his career as a Municipal Police Officer, Verrecchio received commendations, awards, and much praise from the public and the administration.

12.     On or about January 17, 2012, Verrecchio began his federal law enforcement career as an Armed Correctional Officer with the Bureau of Prisons (US Department of Justice) at the Federal Detention Center in Philadelphia, Pennsylvania. During Verrecchio's tenure as a federal employee in a law enforcement capacity, Verrecchio maintained his stellar reputation. During the course of his employment, Verrecchio received much recognition, outstanding performance evaluations, performance awards, and specialized law enforcement assignments. Hence, Verrecchio displayed the professionalism, trust, and integrity needed for such a position.

13.     On or about August 10, 2014, Verrecchio transferred to the Defendant Agency at JBMDL. Throughout his service at JBMDL, Verrecchio was an exceptional employee. He has handled over two hundred (200) calls for service and self-generated law enforcement incidents. Verrecchio has received praise and recognition for his work from co-workers and supervisors, and further received fully successful performance evaluations.

14.     During his five (5) year law enforcement career, including municipal and federal employment, Verrecchio was never the subject of an internal investigation nor had he been the subject of a citizen or co-worker complaint until an incident arose that led to Major Keith

Sandull's (hereinafter "Sandull") harmful involvement in Verrecchio's federal career, and which forms the genesis of the actions complained of herein.

15.     In or around September 2002, Sandull started his employment with the Department of Defense at Fort Monmouth, New Jersey.  He remained employed at Fort Monmouth until in or around 2011.

16.     As reported in an August 26, 1997 article by the Asbury Park Press, Sandull, while employed as a Police Officer for the Avon by the Sea Police Department, was arrested for aggravated sexual assault, ten (10) counts of official misconduct, seven (7) counts of sexual assault, nine (9) counts of criminal coercion and thirteen (13) counts of criminal sexual contact. The article additionally reported Sandull was "arrested in March 1996 after investigators hiding in the then-32-year-old woman's home said they had observed Sandull touching the woman with his police-issued flashlight. Sandull was shackled in his own handcuffs and led away in uniform in his own police cruiser, according to investigators." An April 5, 2016 media report stated that "Edward Dimon, the attorney who filed the defamation lawsuit on behalf of Sandull, said his client resolved those charges by entering the state's pretrial intervention program." (*See* Exhibit A, attached herein).

17.     In or around May 2012, Sandull began working at JBMDL. Sandull is/was the second highest ranking civilian police official at JBMDL. He is/was the Chief of Investigations, Internal Affairs Officer, and Lead Supervisory Detective at JBMDL.

18.     Beginning in or around November and December 2014, Verrecchio made multiple protected disclosures to his chain of command, which, upon information and belief, are protected (hereinafter "protected activity") under, *inter alia*, 5 U.S.C. §§ 2302(b)(8) and (b)(9) amongst other laws, rules, and/or regulations.

4

19.     In or around January 2015, in reprisal for engaging in the aforementioned protected activity, Verrecchio was notified by the Agency that he was the subject of an internal affairs investigation to be conducted by Sandull.

20.     On or about February 6, 2015, in further retaliation for engaging in the aforementioned protected activity, the Air Force unlawfully terminated Verrecchio based on, *inter alia*, erroneous and later found unsubstantiated allegations of sexual harassment that had been investigated by Sandull.

21.     On or about April 14, 2015, after Verrecchio's wrongful termination for engaging in protected activity, Verrecchio appealed to the Merit Systems Protection Board ("MSPB"), where, seeing its error, the Agency confessed error and rightfully reinstated Verrecchio to his employment with full back pay and benefits.

22.     On or about April 22, 2015, Verrecchio engaged in additional protected activity when he disclosed to officials of the Defendant and to an MSPB Administrative Judge that he was forced to work under unsafe conditions. The details of those unsafe conditions are not disclosed herein as they could jeopardize military personnel or facilities or expose flaws in security at JBMDL. Significantly, however, the Administrative Judge issued an Order that chastised the Air Force for creating "needless safety issues for both [Verrecchio] and the base." Verrecchio's new protected activity resulted in his involuntary transfer to another assignment on the Joint Base in yet another apparent violation of federal whistleblower protections.

23.     On or about August 11, 2015, the Agency proposed to suspend Verrecchio for, *inter alia*, an alleged sexual harassment charge as was investigated by Sandull, which were the same allegations that were used as an attempt to justify the aforementioned termination of Verrecchio on or about February 6, 2015 which was later rescinded.

24.     On or about September 3, 2015, Verrecchio responded to the Agency's proposed suspension. Verrecchio noted various discrepancies in the Agency's case and/or Sandull's investigation including, *inter alia,* that the individual making the allegations was not on duty with Verrecchio during the time of the alleged harassing remarks.

25.     During the pendency of the aforementioned disciplinary proceeding, Verrecchio discovered, *via* a public internet Google search, impeachment evidence of Sandull's credibility as an investigator that casts doubt on Sandull's ability to make findings in matters involving sexual misconduct.

26.     On or about November 2, 2015, during the on-going appeal process, Verrecchio disclosed to Air Force management officials the 1996 abuse and misconduct by a superior Police Officer, Sandull, as required by law and as a matter of public concern, and in defense against the Agency's aforementioned erroneous claims of sexual harassment. Verrecchio's protected activities were made via email to the deciding official (an Air Force Lieutenant Colonel), Agency counsel in JBMDL and at Andrews Air Force Base, and included the Agency civilian personnel officer at the base. Sandull was not included on the email. Upon information and belief, Verrecchio's disclosures about Sandull are protected under 5 U.S.C. §§ 2302(b)(8) and (b)(9) amongst other laws, rules, or regulations.

27.     Upon information and belief, Sandull is impaired under *Giglio v. United States*, 405 U.S. 150 (1972), due to the 1996 arrest and 1997 indictment for aggravated sexual assault and thirty-nine (39) other offenses. Sandull's attorney's recent acknowledgement, according to a media report that Sandull resolved the indictment by a pretrial intervention program, would have readily allowed the Agency to charge Sandull with disciplinary action for, *inter alia*, Inability to Perform Full Range of Duties, Lack of Candor, and/or Conduct Unbecoming of a Federal Employee. (*See* Exhibit A, attached herein).

28.     Upon information and belief, and unbeknownst to Verrecchio until a few day ago, the MSPB previously granted an Office of Special Counsel's (OSC) petition to reinstate a civilian Department of Defense (DOD) Police Officer (hereinafter "Whistleblower"), who was unlawfully terminated by the person(s) who hired Sandull as a DOD Police Officer in an attempt to conceal widespread knowledge of Sandull's criminal history within the DOD law enforcement community.  The OSC was able to establish before the MSPB that evidence existed to show the Whistleblower learned of Sandull's criminal history and reported it to the proper authorities and then was unlawfully terminated for reporting that criminal history in violation of federal law. The fact pattern of that case, with its egregious whistleblower retaliation, is similar in many respects to the fact pattern of this case and shows a pattern and practice by Senior DOD officials to engage in unlawful activity to conceal Sandull's criminal history and attempt to punish anybody who reports that criminal history in good faith to the proper federal authorities. (*See* Exhibit B, attached herein).[1]

29.     Upon information and belief, Sandull has a history of erratic behavior and making threats or intimidating his co-workers.  On at least one (1) occasion while working as a civilian police officer for the DOD, Sandull was stripped of his authority to carry a gun for a period of time and was also the subject of numerous investigations for misconduct the outcome of which never appeared to slow his progress in getting promoted.

30.     Upon Information and belief, Sandull while employed by the DOD as a Police Supervisor at Fort Monmouth, was involved in, knew about, was aware of, supervised, and/or approved DOD Police Officer(s) impersonating Federal Agents and, allegedly, according to media reporting, smuggling weapon(s) into Federal Courthouses amongst other places without

---

[1] Neil McPhie was the Chairman of the MSPB at the time of the OSC filing in 2004, McPhie after leaving the MSPB joined Tully Rinckey, P.L.L.C., and became the Managing Partner of its Washington, D.C. office. Mr. McPhie recently stepped down as a partner at Tully Rinckey, P.L.L.C. and became a part-time "Of Counsel" to the firm. Mr. McPhie is not involved in this current litigation in any way.

any lawful authority or the consent of the United States Marshals Service.  This unsanctioned operation resulted in a rare occasion wherein offices at the Fort Monmouth Police Department were raided by real federal agents, according to a Washington Post newspaper story. (*See* Exhibit C, attached herein).

31.     Upon information and belief, Sandull had a close personal and professional relationship with Adam S. Weinstein (hereinafter "Weinstein"), who was Sandull's supervisor at Fort Monmouth and JBMDL. This relationship protected Sandull from allegations of misconduct notwithstanding Weinstein's knowledge of the prior misconduct allegations against Sandull. Weinstein advanced Sandull through the ranks of the Agency.  Weinstein's conduct as a supervisor allowed Sandull to oppress civilian employees of the JBMDL Police Department.  Weinstein has, upon information and belief, recently left the Agency's employ and the State of New Jersey for reasons undetermined.

32.     Upon information and belief, when Sandull's misconduct was reported to superiors, including, but not limited to, Lieutenant Colonel Kenneth Decedue, Colonel Frederick Thaden, Brigadier General James Jacobson, and Major General Frederick Martin, and various Agency counsel, no action was taken to discipline or otherwise sanction Sandull, which further emboldened his workplace behavior.

33.     On or about March 10, 2016, Sandull filed a *Verified Complaint* in the Superior Court of New Jersey against Verrecchio and others, including, but not limited to, the Monmouth County Prosecutor's Office (hereinafter "Verified Complaint") (*See* Exhibit D, attached herein). Sandull's Verified Complaint contains sensitive and confidential information about Verrecchio that was obtained and unlawfully disclosed without Verrecchio's consent. This information qualifies as Verrecchio's personnel records which are protected by the Privacy Act, and include, but are not limited to, the following:

a.  Improper release of Verrecchio's home address (*see* Exhibit D, at ¶ 3);

b.  Improper release information about Verrecchio's attorneys in an internal investigation (*see id.* at ¶ 4);

c.  Improper release of information and findings from an Internal Administrative Investigation conducted by Sandull in or around December 2014 regarding erroneous allegations against Verrecchio regarding sexual harassment and unsafe/misuse of a firearm (*see id.* at ¶¶ 7, 8);

d.  Improper release of Privacy Act protected information that the investigation sustained the allegations against Verrecchio and that he was subjected to discipline or disciplinary action (*see id.* at ¶ 8);

e.  Improper release of Verrecchio's protected whistleblowing activities, whereby Verrecchio internally disclosed to Agency management officials reports of allegations of prior criminal activity, including indictments, related to Sandull's use of his position as a police officer to extort sexual relations from a woman (*see id.* at ¶¶ 18, 19, 35);  and,

f.  Improper release of communications between Verrecchio and other Agency Police Officers, which, as is explicitly admitted in the Verified Complaint, were obtained by Sandull in the course of his managerial duties at the Agency (*see id.* at ¶¶ 25, 26, 27, 28).

34.   On or about March 15, 2015, Sandull filed an *Order To Show Cause With Temporary Restraints* with a *Certification Of Plaintiff In Support Of Order To Show Cause With Restraints* (hereinafter "Certification") (*see* Exhibit E, attached herein), which disclosed further improper protected information in violation of the Privacy Act, including, but not limited to the following:

a.  Improper release of Privacy Act protected information that the investigation sustained the allegations against Verrecchio and that he was subjected to discipline or disciplinary action (*See* Exhibit E, at ¶ 5);

b.  Improper release of Verrecchio's protected whistleblowing activities, whereby Verrecchio internally disclosed to Agency management officials reports of allegations of prior criminal activity, including indictments, related to Sandull's use of his position as a police officer to extort sex from a woman (*see id.* at ¶ 26); and,

c.  Improper released of Privacy Act protected information pertaining to the outcome of Verrecchio's whistleblowing activities (*see id.* at ¶ 30).

35.   On or about March 9, 2016, Sandull's attorneys, Edward J. Dimon (hereinafter "Dimon") and Marguerite Kneisser (hereinafter "Kneisser"), filed a *Brief In Support Of Sandull's Order To Show Cause With Restraints* (hereinafter "Attorney Brief") (*See* Exhibit F, attached herein). The Attorney Brief made public additional information in violation of the Privacy Act, including, but not limited to the following:

a.  Improper release of Verrecchio's home address (*see* Exhibit F, at ¶ 3);

b.  Improper release information about Verrecchio's attorneys in an internal investigation (*see id.* at ¶ 4);

c.  Improper release of information and findings from an Internal Administrative Investigation conducted by Sandull in or around December 2014 regarding erroneous allegations against Verrecchio regarding sexual harassment and unsafe/misuse of a firearm (*see id.* at ¶ 7, 8);

d.  Improper release of Verrecchio's whistleblowing activities, whereby Verrecchio internally disclosed to Agency management officials reports of allegations of

prior criminal activity, including indictments, related to Sandull's use of his position as a police officer to extort sexual relations from a woman (*see id.* at ¶ 18); and,

e.  Improper release of communications between Verrecchio and other Agency Police Officers, which, as is explicitly admitted in the Verified Complaint and Attorney Brief, were obtained by Sandull in the course of his managerial duties at the Agency (*see id.* at ¶ 25, 26, 27, 28, 35).

36.    Upon information and belief, the personal identifiable information provided in the Verified Complaint, Certification, and Attorney Brief, which are all public records, was obtained by Sandull in his role as an Agency senior management official with access to Privacy Act protected records that he either created or reviewed during the normal course of his duties as a federal employee, or which he obtained from internal Agency officials with access to them in the course of investigating Verrecchio for erroneous allegations for which Verrecchio has, in part, been fully exonerated.

37.    Upon information and belief, Sandull filed the Verified Complaint and Certification, which are public records, to personally enrich himself by using unlawfully obtained Privacy Act protected information Sandull obtained solely by virtue of his senior management position with the Agency.

38.    Upon information and belief, Sandull's actions in disclosing personal identifiable information in the Verified Complaint, Certification, and Attorney Brief constitute improper use of his public office for private gain, which in addition to violating the Privacy Act, violates 5 C.F.R. §§ 2635.101(b)(1), (b)(3), (b)(7), and (b)(10). Despite these clear violations of federal law and regulations, no disciplinary action has been taken against Sandull by the Agency.

39.    Upon information and belief, Sandull desires to use the Verified Complaint, Certification, and Attorney Brief to distract and/or intimidate other Agency officials and employees from discovering or repeating the protected disclosures made by Verrecchio that were already in the public domain through numerous press reports, which reported that Sandull was previously arrested and indicted for aggravated sexual assault, and numerous other crimes, while he was employed as a Police Officer.

40.    Upon information and belief, Sandull wishes to use the Verified Complaint, Certification, and Attorney Brief to intimidate others, including attorney representatives of federal employees, from making protected disclosures regarding current or past misconduct such disclosures which were made in the course of their lawful, ethical, and zealously defense of their client.

41.    Upon information and belief, Sandull has been using government equipment to advance his Verified Complaint, Certification, and Attorney Brief, and he discussed the same with his attorneys and/or potential witnesses, and/or with co-workers that has caused them to feel intimidated. Sandull's conduct is further evidence of malice towards Verrecchio due to Verrecchio's protected activity, thereby creating a hostile work environment.

42.    As a result of the Agency's violations of law, the Verified Complaint led to widespread publicity because of the salacious details that Sandull vindictively, and without basis, asserted as facts involving, *inter alia*, lies, sex, guns, and cops.  Sandull knew or should have known that his lawsuit, containing false, misleading, and/or scandalous allegations would draw media attention and the attention of the public at large.

43.    Upon information and belief, the Agency's conduct was knowing, willful, intentional, and/or done with malicious intent to expose Verrecchio to embarrassment and public ridicule, and to prevent him from obtaining other employment, because Verrecchio engaged in

protected disclosures by disclosing Sandull's arrest and indictment history, and made other reportings as required by law and Agency regulation in order to defend against the Agency's spurious allegations of misconduct raised against Verrecchio.

44. Upon information and belief, the DOD used social media to share the Privacy Act protected information about Verrecchio.  (See Exhibit G, attached herein).

45. Upon information and belief, despite the outrageous misconduct of Sandull, the Agency has failed to properly investigate those acts. It is unclear if the Federal Bureau of Investigation (FBI) is investigating this matter as allowed by 28 U.S.C. § 535 or if the United States Attorney for the District of New Jersey has investigated or opened an inquiry into the matter.

46. Upon information and belief, the Agency, by and through Sandull, and without authority and in violation of the Privacy Act and/or regulations implementing the Privacy Act and/or Agency policy on the disclosure of information pertaining to investigations of agency employees, first disclosed Privacy Act protected information to Dimon, Kneisser, Sandull's spouse, Theresa M. Sandull, and his daughter, Jessica Sandull, amongst other non-federal employees, who are persons not authorized access to Privacy Act protected documents regarding Verrecchio.

47. Upon information and belief, Sandull, as an officer and/or employee of the Agency, who by virtue of his employment and/or official position, has possession of, or access to, Agency records that contain individually identifiable information and the disclosure of which is prohibited by the Privacy Act, or by rules or regulations established under the Privacy Act, and who knowing that disclosure of the specific material is so prohibited, willfully disclosed the protected documents regarding Verrecchio in an unlawful manner to other sources not entitled to

receive it and is thereby guilty of, *inter alia*, a misdemeanor and could be fined not more than $5,000 pursuant to 5 U.S.C § 552a(i)(1).

*First Cause of Action (Privacy Act - Improper Disclosure in Violation of 5 U.S.C. § 552a(b) and 5 U.S.C. § 552a(g)(1)(D))*

48.     Verrecchio repeats and re-alleges the allegations contained above in paragraphs 1 through 47 inclusive.

49.     Pursuant to 5 U.S.C. § 552a(b), "No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains . . ."

50.     Pursuant to 5 U.S.C. § 552a(g)(1)(D), "Whenever any agency . . . fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual . . . the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection."

51.     The Agency intentionally and/or willfully disclosed the contents of confidential personnel records pertaining to Verrecchio to an unauthorized party without the written consent of Verrecchio. The Agency intentionally and/or willfully disclosed the confidential investigations, among other information, and other Privacy Act protected records to Dimon, Kneisser, the Superior Court of New Jersey, the Monmouth County Prosecutor's Officer, to his spouse, daughter, and to the public at large as the Verified Complaint, Certification, and Attorney Brief is a public record.

52.     The Agency failed to secure written authorization from Verrecchio prior to providing the specific information detailed above. Nor was disclosure permitted by a routine use exception.

53.     As a direct and proximate result of the Agency's intentional and/or willful improper disclosures, Verrecchio has suffered grave injury, including but not limited to actual damages, emotional pain and suffering, and other economic and non-economic damages, which are ongoing and include damage to his ability to be gainfully employed as a police officer.

*Second Cause of Action (Privacy Act - Failure to Account for Disclosure in Violation of 5 U.S.C. § 552a(c) and 5 U.S.C. § 552a(g)(1)(D))*

54.     Verrecchio repeats and re-alleges the allegations contained above in paragraphs 1 through 53 inclusive.

55.     Pursuant to 5 U.S.C. § 552a(c), "Each agency, with respect to each system of records under its control, shall -- (1) except for disclosures made under subsections (b)(1) or (b)(2) of this section, keep an accurate accounting of -- (A) the date, nature, and purpose of each disclosure of a record to any person or to another agency made under subsection (b) of this section; and (B) the name and address of the person or agency to whom the disclosure is made."

56.     Pursuant to 5 U.S.C. § 552a(g)(1)(D), "Whenever any agency . . . fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual . . . the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection."

57.     The Agency intentionally and/or willfully disclosed the contents of confidential personnel records pertaining to Verrecchio to unauthorized parties without the written consent of Verrecchio, and thereby intentionally and/or willfully violated the Privacy Act.

58.     The Agency intentionally and/or willfully failed to keep an accurate account of the date, nature, name, and address of the individuals to whom the disclosures identified in Paragraphs 33(a)-(f), 34(a)-(c), and 35(a)-(e), *supra,* were made, and the purposes of the disclosures.

15

59.     As a direct and proximate result of the Agency's intentional and/or willful failure to account for its disclosures, Verrecchio has suffered grave injury, including, but not limited to actual damages, emotional pain and suffering, and other economic and non-economic damages, which are ongoing and include damage to his ability to be gainfully employed as a police officer.

*Third Cause of Action (Privacy Act - Improper Maintenance of Inaccurate Record in Violation of 5 U.S.C. § 552a(g)(1)(C))*

60.     Verrecchio repeats and re-alleges the allegations contained above in paragraphs 1 through 59 inclusive.

61.     Pursuant to 5 U.S.C. § 552a(g)(1)(C), "Whenever any agency . . . fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual . . . the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection."

62.     The Agency intentionally and/or willfully collected and maintained in its system of records the reports and other records referred to in Paragraphs 33(a)-(f), 34(a)-(c), and 35(a)-(e), *supra*, and failed to maintain Verrecchio's records in such a manner as to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of or benefits of or to Verrecchio made on the basis of the aforementioned records.

63.     As a direct and proximate result of the Agency's intentional and/or willful failure to maintain its inaccurate records, Verrecchio has suffered grave injury, including but not limited to actual damages, emotional pain and suffering, and other economic and non-economic damages, which are ongoing.

*Fourth Cause of Action (Privacy Act - Improper Maintenance of Irrelevant and Unnecessary Records in Violation of 5 U.S.C. § 552a(e)(1))*

64.     Verrecchio repeats and re-alleges the allegations contained above in paragraphs 1 through 63 inclusive.

65.     Pursuant to 5 U.S.C. § 552a(e)(1), "Each agency that maintains a system of records shall . . . maintain in its records only such information about an individual as is relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute or by executive order of the President."

66.     The Agency intentionally and/or willfully collected and maintained information in its system of records relating to Verrecchio related to the unsubstantiated allegations against him, which was neither relevant nor necessary to accomplish a purpose of the Agency as required by law or Executive Order.

67.     As a direct and proximate result of the Agency's intentional and/or willful failure to maintain its irrelevant and unnecessary records, Verrecchio has suffered grave injury, including but not limited to actual damages, emotional pain and suffering, and other economic and non-economic damages, which are ongoing.

*Fifth Cause of Action (Privacy Act – Improper Maintenance of Irrelevant, Incomplete and/or Dated Records in Violation of 5 U.S.C. § 552a(e)(5))*

68.     Verrecchio repeats and re-alleges the allegations contained above in paragraphs 1 through 67 inclusive.

69.     Pursuant to 5 U.S.C. § 552a(e)(5), "Each agency that maintains a system of records shall . . . maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination."

70.     The Agency intentionally and/or willfully collected and maintained in its system of records the confidential information relating to Verrecchio as outlined in Paragraphs 33(a)-(f), 34(a)-(c), and 35(a)-(e), *supra*. This information included erroneous allegations against Verrecchio and other Privacy Act protected records, and inaccurate and defamatory information regarding Verrecchio.

71.      As a direct and proximate result of the Agency's intentional and/or willful failure to correct its maintenance of its irrelevant and unnecessary records, Verrecchio has suffered grave injury, including but not limited to actual damages, emotional pain and suffering, and other economic and non-economic damages, which are ongoing and include damage to his ability to be gainfully employed as a police officer.

*Sixth Cause of Action (Privacy Act – Improper Dissemination to Non-Agency Personnel in Violation of 5 U.S.C. § 552a(e)(6))*

72.     Verrecchio repeats and re-alleges the allegations contained above in paragraphs 1 through 71 inclusive.

73.     Pursuant to 5 U.S.C. § 552a(e)(6), "Each agency that maintains a system of records shall . . . prior to disseminating any record about an individual to any person other than an agency, unless the dissemination is made pursuant to subsection (b)(2) of this section, make reasonable efforts to assure that such records are accurate, complete, timely, and relevant for agency purposes."

74.     The Agency intentionally and/or willfully disseminated to non-federal employees, including, but not limited, to Dimon, Kneisser, the Superior Court of New Jersey, the Monmouth County Prosecutor's Officer, his spouse, daughter, and the public at large, information concerning Verrecchio that is protected by the Privacy Act. This information included confidential investigations into allegations against Verrecchio and other Privacy Act protected

records, as outlined in Paragraphs 31(a)-(f), 32(a)-(c), and 33(a)-(e), *supra*, and inaccurate and defamatory information regarding Verrecchio.

75. Prior to disseminating the specific information concerning Verrecchio's detailed above, the Agency failed to make reasonable efforts to ensure that the information and records were accurate, complete, timely, and relevant for the Agency's purposes in violation of 5 U.S.C. § 552a(e)(6). Rather, the information and records that the Agency disseminated to Dimon, Kneisser, the Superior Court of New Jersey, the Monmouth County Prosecutor's Officer, members of the media, his spouse, daughter, and/or unknown others were irrelevant, false, malicious, defamatory, incomplete, inaccurate, and untimely.

76. As a direct and proximate result of the Agency's intentional and/or willful improper dissemination of its records to non-Agency personnel, Verrecchio has suffered grave injury, including but not limited to actual damages, emotional pain and suffering, and other economic and non-economic damages, which are ongoing and include damage to his ability to be gainfully employed as a police officer.

*Seventh Cause of Action (Privacy Act - Failure to Establish Rules of Conduct and to Properly Instruct in Violation of 5 U.S.C. § 552a(e)(9))*

77. Verrecchio repeats and re-alleges the allegations contained above in paragraphs 1 through 76 inclusive.

78. Pursuant to 5 U.S.C. § 552a(e)(9), "Each agency that maintains a system of records shall . . . establish rules of conduct for persons involved in the design, development, operation, or maintenance of any system of records, or in maintaining any record, and instruct each such person with respect to such rules and the requirements of this section, including any other rules and procedures adopted pursuant to this section and the penalties for noncompliance."

79. The Agency intentionally and/or willfully failed to establish and/or enforce rules of conduct for persons involved in the design, development, operation, or maintenance the

Agency's system of records, to instruct "each such person," and/or to explain penalties for noncompliance.

80.    The confidential investigations into the allegations against Verrecchio, as well as other information, as outlined Paragraphs 33(a)-(f), 34(a)-(c), and 35(a)-(e), *supra*, which were improperly disseminated due to the Agency's failure to establish and/or enforce rules of conduct for persons involved in the design, development, operation, or maintenance of the Agency's system of records, could reasonably be expected to result in substantial harm, embarrassment, inconvenience, and unfairness to Verrecchio including damage to his ability to be gainfully employed as a police officer.

81.    Had the Agency properly established and/or enforced such rules of conduct, the misconduct at issue, *i.e.,* the improper collection, maintenance, disclosure, and dissemination of records to many persons including the public, would not have occurred and Verrecchio would not have been injured.

82.    Upon information and belief, Sandull has not been disciplined in any way for his intentional and/or willful violations of the Privacy Act and, therefore, the Agency has failed to enforce such rules of conduct.

83.    As a direct and proximate result of the Agency's intentional and/or willful failure to establish and/or enforce rules of conduct and to properly instruct, Verrecchio has suffered grave injury, including but not limited to actual damages, emotional pain and suffering, and other economic and non-economic damages, which are ongoing.

*Eighth Cause of Action (Privacy Act - Failure to Establish Safeguards in Violation of 5 U.S.C. § 552a(e)(10))*

84.    Verrecchio repeats and re-allege the allegations contained above in paragraphs 1 through 83 inclusive.

85.     Pursuant to 5 U.S.C. § 552a(e)(10), "Each agency that maintains a system of records shall . . . establish appropriate administrative, technical, and physical safeguards to insure the security and confidentiality of records and to protect against any anticipated threats or hazards to their security or integrity which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained."

86.     The Agency intentionally and/or willfully failed to establish appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of records and to protect against threat or hazard to the security and integrity of these records, in violation of 5 U.S.C. § 552a(e)(10).

87.     The aforementioned records, which the Agency failed to safeguard, has caused injury to Verrecchio and/or could reasonably be expected to result in substantial harm, embarrassment, inconvenience, and unfairness to Verrecchio including damage to his ability to be gainfully employed as a police officer.

88.     As a direct and proximate result of the Agency's intentional and/or willful failure to establish safeguards, Verrecchio has suffered grave injury, including but not limited to actual damages, emotional pain and suffering, and other economic and non-economic damages, which are ongoing and include damage to his ability to be gainfully employed as a police officer.

*Damages*

89.     As a direct and proximate result of the Agency's violations, Verrecchio has suffered adverse and harmful effects, including but not limited to actual damages, mental distress, emotional trauma, embarrassment, humiliation, significant reputational harm, and loss of or jeopardy to present and/or future employment and financial opportunities and retirement.

*Requested Relief*

WHEREFORE, Verrecchio requests that the Court award him the following relief:

1.      Declare that the Defendant violated the Privacy Act;

2.      Order the Defendant to immediately disclose to Verrecchio the identities of those to whom the Privacy Act records were disclosed;

3.      Award Verrecchio actual damages under 5 U.S.C. § 552a(g)(4)(A), the exact amount of which is to be determined at trial, but which is not less than $1,000 per applicable cause of action;

4.      Order the Defendant to expunge all records or information improperly maintained by the Defendant that are inaccurate and/or derogatory to Verrecchio;

5.      Enjoin the Defendant from retaliating against Verrecchio for filing this complaint;

6.      Enjoin all Agency Officers who were found to have violated the Privacy Act from any involvement with current or future investigations, administrative hearings, decisions, or personnel actions involving Verrecchio to ensure his due process rights in any administrative matters are not impaired;

7.      Award Verrecchio reasonable costs and attorney fees as provided in 5 U.S.C. §§ 552a(g)(3)(B) and/or (4)(B), 552(a)(4)(E) and/or 28 U.S.C. § 2412(d);

8.      Refer those Agency officials responsible for violating the Privacy Act to the United States Attorney General for prosecution under 5 U.S.C. § 552a(i)(1);

9.      Expedite this action to the extent warranted by law pursuant to 28 U.S.C. § 1657(a); and,

10.     Grant such other and further relief as the Court may deem just, proper, and equitable, including injunctive and declaratory relief as may be required in the interests of justice.

Date:  April 13, 2016                              Respectfully Submitted,

_____
Mathew B. Tully, Esq.
Founding Partner
(D.C. Bar No. 491695)

Stephanie Rapp-Tully, Esq.
Associate
(D.C. Bar No. 1016900)

TULLY RINCKEY, PLLC
Attorneys & Counselors at Law
815 Connecticut Ave, Suite 720
Washington, D.C.  20006
Phone:  (202) 787-1900
Fax:  (202) 640-2059
mtully@fedattorney.com
srapptully@fedattorney.com

*Attorney for the Plaintiff*